**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> LANARION NORWOOD and <br> McKINLEY DENSON | Civil Action No. <br> 1:20-cr-00488-SDG-JSA |

## OPINION AND ORDER

This matter is before the Court on Defendant Lanarion Norwood's motion to suppress evidence and request for a *Franks* hearing [ECF 75]. After careful consideration of the parties' briefing, the Court **DENIES** Norwood's motion and request. Defendant McKinley Denson's Adopted Motion [ECF 102] is likewise **DENIED**.

## I.   BACKGROUND

On June 16, 2020, at the request of DEA agents and to assist in a larger drug-trafficking investigation, Georgia State Patrol Trooper Brodie Forrester stopped a vehicle driven by Norwood's co-defendant, McKinley Denson, in which Norwood was a passenger, for a window-tint violation.[1] Trooper Forrester conducted a search of the vehicle after detecting the odor of marijuana,[2] and discovered $80,000

---

[1]   ECF 81, at 14:4–5; 58:16–36; 59:1–4.

[2]   *Id.* at 56:8–18.

in cash, a handgun, and six cell phones, among other things.[3] Two of those cell phones belonged to Norwood, as did the handgun.[4] The Chamblee Police Department seized and secured the cell phones, including Norwood's, and placed Norwood under arrest.[5]

On June 25, nine days later, United States Drug Enforcement Administration (DEA) Task Force Officer (TFO) George Smith applied for a search warrant "to access and obtain data extracted from" the six cell phones the Chamblee Police Department seized.[6] DeKalb County Superior Court Judge Linda Bratton Hayes issued a state search warrant authorizing agents to "search and seize [the cell phones] within ten (10) days."[7] DEA personnel retrieved the phones from the Chamblee Police Department on June 29 and began searching them, completing manual or Cellebrite[8] searches of five of the six phones before the warrant expired.[9] DEA personnel did not search the sixth cell phone, which belonged to Norwood,

---

[3]   ECF 84-2, at 3–4.

[4]   *Id.*

[5]   ECF 84-3, at 3.

[6]   ECF 84-4, at 4.

[7]   ECF 84-5, at 2.

[8]   The Government explains that Cellebrite machines are "designed to allow searching and copying of cell phone contents." ECF 84, at 4.

[9]   ECF 84-6, at 1.

"due to time constraints and technical difficulties with the original Cellebrite machine."[10]

TFO Smith applied for a second search warrant to search Norwood's phone on July 9.[11] In the second warrant application, he noted the time constraints and technical difficulties his team faced, which DeKalb Superior Court Judge Shondeana Crews Morris reviewed before issuing the second warrant.[12] The second warrant authorized agents to "search and seize within ten (10) days of this date" Norwood's cell phone and others.[13] DEA personnel executed a search of the phone on July 10, resulting in a 1,909 page Cellebrite "Extraction Report" detailing the results of the search—thumbnail images, including at least one image of a video that appeared to capture Norwood's handgun, which the Chamblee Police Department had seized during the June 16 traffic stop.[14] However, DEA personnel only saved the Extraction Report; they failed to properly preserve the underlying

---

10   *Id.* at 1–2; ECF 84-8.

11   *Id.*

12   *Id.* at 4; ECF 84-9, at 2.

13   *Id.*

14   ECF 84-10; ECF 84-11 (Page 1,882 of Extraction Report).

data on an external device, which the Government only discovered after Norwood's December 9 indictment.[15]

Following Norwood's indictment, the Government, through Special Agent James DiGiulio, applied for a third search warrant on July 16, 2021.[16] Special Agent DiGiulio's warrant application described the prior warrants the Government had obtained, and noted that DEA personnel had already searched Norwood's cell phone.[17] It also detailed the evidence DEA personnel had uncovered—a thumbnail video image of Norwood's handgun—and the Government's failure to properly preserve the extracted evidence.[18] With this information in hand, United States Magistrate Judge Justin S. Anand issued a third search warrant that day, authorizing another search of Norwood's cell phone.[19] The Government executed the third search warrant on July 19, copying and properly preserving the video featured in the Extraction Report, among other evidence.[20]

---

[15]   ECF 84, at 5; ECF 1.

[16]   *See generally* ECF 84-12.

[17]   *Id.* at 10.

[18]   *Id.*

[19]   *See generally* ECF 84-13.

[20]   ECF 84, at 7.

## II.   DISCUSSION

### A.   Fourth Amendment Suppression

The Fourth Amendment provides "the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. At issue is to what extent the Fourth Amendment precludes a delay between the warrantless seizure of Norwood's cell phone supported by probable cause and a search of that cell phone pursuant to a lawful search warrant.

### 1.   Legal Standard

 "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). Accordingly, "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant." *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)).

The reasonableness of the delay is evaluated "in light of all the facts and circumstances," and "on a case-by-case basis." *Id.* at 1351 (quoting *United States v. Mayomi*, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989)). "[T]he reasonableness

determination will reflect a careful balancing of governmental and private interests." *Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992) (cleaned up); *see also United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006); *accord United States v. Place,* 462 U.S. 696, 703 (1983) (courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion"). Governmental interests include: "(1) the nature and complexity of the investigation, and whether overriding circumstances arose, necessitating a diversion of law enforcement resources; (2) the quality of the warrant application and the amount of time one would expect it would take to prepare; and (3) any other evidence pertaining to law enforcement's diligence." *Thomas v. United States*, 755 F. App'x. 477, 488 (11th Cir. 2019) (quoting *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012)). Relevant private interests include: "(1) the significance of the interference with the person's possessory interest; (2) the duration of the delay; (3) whether the person consented to the seizure; and (4) the government's legitimate interest in holding the property as evidence." *Id.*

### 2.    Analysis

Norwood does not contest that the Chamblee Police Department had probable cause to seize his cell phone on July 16, 2020. Rather, he argues that the

time between the seizure and the Government's search pursuant to the third warrant amounts to an unreasonable delay in violation of his Fourth Amendment rights.[21] "Instead of immediately trying to correct its failure to properly preserve evidence," Norwood avers, "the [G]overnment waited one (1) year and six (6) days to apply for [the third] search warrant. . . . after discovery was closed . . . and an order was entered certifying the case ready for trial."[22] Because of this delay, and because the Government "represented . . . it had disclosed all Rule 16 materials," Norwood insists that suppression is warranted.[23]

In short, the Government argues that the operative delay—the time between the Chamblee Police Department's seizure of Norwood's phone and when the first warrant issued—was not unreasonable under the circumstances.[24] The Government avers that *Mitchell*, which Norwood cites extensively, is factually inapposite, and "[t]he Government's decision to seek a second and third search warrant for Defendant's [cell phone] when a search of that phone had already been authorized by [the first] search warrant does not violate the Fourth

---

21    ECF 75, at 13.

22    *Id.* at 14.

23    *Id.*

24    *Id.*

Amendment."[25] Thus, the Government believes it never exceeded the probable cause underlying the first warrant, and its disclosure of evidence obtained pursuant to the third warrant after the close of discovery is not grounds for suppression. The Government's position is persuasive.

### i. The Delay Was Reasonable Per *Mitchell*'s Balancing Test.

*Mitchell* is indeed factually inapposite, but it explains why the Government's delay was reasonable. First, the Eleventh Circuit has typically measured a delay for Fourth Amendment purposes as the time between the seizure of a device and the time of the application for or procurement of a warrant to search that device. 565 F.3d at 1350 (noting that "seizure based on probable cause is unconstitutional if the police act with unreasonable delay in *securing a warrant*" — not executing the search of the seized device) (emphasis added); *United States v. Laist*, 702 F.3d 608, 614 (11th Cir. 2012) (measuring the "delay" as the time between the seizure of the defendant's device and the date of the Government's warrant application, instead of the date it obtained the warrant).

"Federal courts have generally not required a second warrant to search a properly seized computer 'where the evidence obtained in the search did not

---

[25]   ECF 84, at 9.

exceed the probable cause articulated in the original warrant,'" so "*Mitchell* does not apply" to subsequent warrants for the same device in multiple warrant cases. *United States v. Ilonzo*, 1:12–CR–276–SCJ–GGB, 2015 WL 5827598, at *19–*21 (N.D. Ga. Oct. 6, 2015) (quoting *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012)). Therefore, the Government correctly notes that the "analogous time period would be from the date [Norwood's] [cell phone] was seized (June 16, 2020) until the date [ ] the first warrant issued (June 25, 2020): a period of nine days"—not over one year as Norwood insists, nor the time between the seizure of Norwood's phone and the issuance of the second warrant.[26]

Second, the Eleventh Circuit held that "the detention of [a computer] hard drive for over three weeks before a warrant was sought" was unreasonable, in part, because Mitchell requested—and was denied—access to the hard drive during that time. *Id.* at 1351. Furthermore, the affiant delayed in applying for the warrant to search Mitchell's device because "he didn't see any urgency of the fact that there needed to be a search during the two weeks that [he] was gone" for a training program. *Id.* Balancing Mitchell's private possessory interest against the Government's interest, the court found that the Government offered "no

---

[26]   ECF 84, at 12–13.

compelling justification for the delay." *Id.* Therefore, the three-week delay between the seizure of Mitchell's hard drive and the Government's search of Mitchell's hard drive was unreasonable and violative of the Fourth Amendment. *Id.* at 1352.

Balancing Norwood's private interests against the Government's interests here, this case differs from *Mitchell*. Norwood's private interests are relatively slight in comparison: Though the Government concedes the seizure "involved a meaningful interference with Defendant's possessory interest . . . and [was] non-consensual,"[27] Norwood does not contend, nor does the record reflect, that he requested his phone or otherwise attempted to exercise his possessory interest over it, *Ilonzo*, 2015 WL 5827598, at *21 (noting "failure to seek return of evidence that was properly seized at its outset undermines a later claim that a delay in searching the property had an adverse [effect on] a legitimate interest"); and the

---

[27] ECF 84, at 19. The Government attempts to distinguish cell phone searches from computer searches, and intimates that Norwood's possessory interest in his cell phone is not as pronounced as it would be in a computer. *Id.* at 19 n.7. The Government cites no case for this proposition, and the Supreme Court disagreed with it in *Riley v. California*, 573 U.S. 373, 393 (2014). "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." *Id.*

nine-day delay between the Government's seizure and search of Norwood's phone is insubstantial in comparison to the twenty-one-day delay in *Mitchell*.

The Government's interests, however, are weighty. This investigation, while not overly complex, was affected by technical issues with the Cellebrite machine. Further, the Government was diligent, taking arguably unnecessary steps to apply for additional warrants each time it tried to search Norwood's phone. Moreover, the Government had a legitimate interest in holding Norwood's phone as it had probable cause to believe the phone contained evidence connecting Norwood to the charged offenses, and possibly a drug trafficking operation.

On balance, the Government's interests justified its nine-day delay. For these reasons and the additional factors discussed below, the Government's delay was reasonable, and suppression is not warranted.

### ii.     The Government's Search of Norwood's Cell Phone Did Not Exceed Its Probable Cause.

The Government's probable cause did not dissipate when the first warrant—or the second warrant—expired. The same is true whether the warrant issued from a state judge or federal magistrate judge. *See United States v. Mobley*, 1:16-CR-145-TWT-JKL-6, 2017 WL 10574358, *11 (N.D. Ga. 2017) (citing *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993) ("The Fourth Amendment does not require that search warrants contain expiration dates.")); *Mastrogiovanni v.*

*Georgia*, 324 Ga. App. 739, 742–43 (2013) ("We are aware of no authority for the proposition that items seized from the lawful execution of a search warrant must then be analyzed, tested, or examined within the ten-day period provided for in O.C.G.A. § 17–5–25."). Therefore, the Government's search of Norwood's phone pursuant to the second and third warrants was supported by probable cause.

Aa a result, even if Norwood *had* challenged the probable cause undergirding the first warrant (and he did not), he could not have persuasively argued that any search of his phone exceeded the scope of that probable cause. *See United States v. Zekic*, No. 1:10-CR-110-TCB-CCH, 2010 WL 4962985, at *1 (N.D. Ga. Oct. 28, 2010) (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). The Court accordingly declines to suppress on this ground.

### *iii.* Rule 16 Was Not Violated.

Because the Government obtained evidence pursuant to the third search warrant that it could not have produced before discovery closed, Norwood argues

that the Government violated Fed. R. Crim. P. 16.[28] Rule 16 requires the Government to disclose "any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists." Fed. R. Crim. P. 16(a)(1)(B)(i). Rule 16 also requires, "[u]pon a defendant's request, [that] the government must permit the defendant to inspect and copy . . . data . . . [or] tangible objects . . . if the item is within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(D). However, the Government produced what was in its "possession, custody, or control" at all times. *Id.*

Most importantly, Norwood has not been prejudiced. Norwood does not allege that the Government failed to produce the Extraction Report, or that Norwood requested copies of the items detailed in the Extraction Report before now. Norwood has had the Extraction Report—including the same evidence the Government later obtained, albeit in a small-scale format—since before the close of discovery. The Government disclosed the evidence Norwood seeks to suppress as soon as was practicable and acted in good faith with respect to Rule 16, so

---

[28]   ECF 75, at 14.

suppression is not appropriate. *United States v. Cannington*, 729 F.2d 702, 712 (11th Cir. 1984) ("It is the trial court which must determine if the government acted in good faith with respect to Rule 16.").

Because, on balance, the Government's delay was reasonable, the Government did not exceed the scope of its probable cause, and the Government did not violate Rule 16, Norwood's motion to suppress evidence is denied.

### B.    *Franks* Hearing

Norwood believes the third warrant application contained "misleading statements and . . . material omissions."[29] As a result, he requests a *Franks* hearing.

### 1.    Legal Standard

"Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). A "substantial preliminary showing" that an omission was "essential to the finding of probable cause" may likewise justify an evidentiary hearing. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks*,

---

29    ECF 75, at 15.

438 U.S. at 155–56); *Madiwale v. Savaaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (quoting *Untied States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)). However, the defendant's challenge "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. This threshold "substantiality requirement is not lightly met." *Arbolaez*, 450 F.3d at 1294. For instance, "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished" as proof of the alleged deliberate falsehoods or material omissions that underpin the moving party's request for an evidentiary hearing. *Franks*, 438 U.S. at 171.

### 2.   Analysis

Norwood argues that the Government is responsible for "several material omissions in its affidavit for the third search warrant."[30] In Norwood's view, Special Agent DiGiulio omitted the following facts from his warrant application: the Government had no evidence, even after searching five of the six cell phones, that Norwood had communicated with his co-defendants or the DEA undercover agent working the case, or that Norwood used his phone "in connection with the alleged drug offense on that day";[31] only one of six cell phones recovered belonged

---

[30]   *Id.* at 16.

[31]   *Id.* at 16–17.

to Norwood;[32] Norwood offered to make, and DEA personnel declined to facilitate, a call to his fiancée to "request that she bring his [recent] lottery tickets" to prove that he won the money observed during the traffic stop;[33] and the DEA "never identified Mr. Norwood as a co-conspirator" in the drug trafficking operation it was investigating.[34] The issue is whether these omissions were material.

The Government argues they were not, and that the third search warrant application contained no false statements or material omissions.[35] Further, the Government contends that, even if the third warrant application contained the facts Norwood enumerates, probable cause would still have existed to support the third search warrant. The Government's position is convincing.

Even if the probable cause from the first warrant had somehow expired—which it did not for the reasons discussed above—Norwood has failed to make a substantial preliminary showing that a false statement or material omission

---

[32]   *Id.* at 17. As noted above, two seized cell phones belong to Norwood. The Court presumes Norwood's counsel erred in asserting that only one of the six seized cell phones belongs to Norwood.

[33]   *Id.*

[34]   *Id.*

[35]   ECF 84, at 21.

influenced the U.S. Magistrate Judge's probable cause finding supporting the third warrant. *Arbolaez*, 450 F.3d at 1294. The U.S. Magistrate Judge "properly relied on [Special Agent DiGiulio's] opinion, based on his training and experience regarding the way drug traffickers use cell phones to facilitate their illegal activities, to find a nexus between [Norwood's cell phone] and evidence of the drug conspiracy." *United States v. Vega-Cervantes*, No. 1:14-CR-234-WSD, 2015 WL 4877657, at *17 (N.D. Ga. Aug. 13, 2015) (citing *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) (opinions and conclusions of experienced agents about facts are properly considered in determining probable cause)). In light of the facts presented in the affidavit by Special Agent DiGiulio, all of which were true, it is difficult to imagine that the U.S. Magistrate Judge would not have found probable cause existed under any circumstance—even if Special Agent DiGiulio's warrant application had included each item Norwood listed in his motion to suppress.

Of course, Special Agent DiGiulio was not required to include facts that did not bear on his own probable cause analysis in his application for the third warrant. Norwood has not demonstrated that a *Franks* hearing is justified. Therefore, the Court denies Norwood's request.

### C.     Good Faith Exception to the Exclusionary Rule

The Government raises the good faith exception to the exclusionary rule in its November 5 supplemental brief.[36] Even if the Court had invalidated any of the three warrants in this case or found that they were unsupported by probable cause, the good faith exception would apply, and the Court would decline to suppress the evidence.

### 1.     Legal Standard

"The Fourth Amendment prohibits unreasonable searches but makes no mention of a remedy." *United States v. Morales*, 987 F.3d 966, 972 (11th Cir. Feb. 5, 2021) (citing U.S. Const. amend. IV.). The exclusionary rule bridges this gap: "Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (internal quotation marks and citation omitted). The exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011) (cleaned up). Therefore, the rule "applies only where its application will in fact deter unreasonable searches and seizures." *Morales*, 987 F.3d at 973.

---

[36]   ECF 91, at 5–6.

"To date, the Supreme Court has applied the good-faith exception when, among other things, officers reasonably relied on a warrant that was later deemed invalid for lack of probable cause, on a warrant that erroneously appeared outstanding due to an error in a court or police database, on a statute that was later deemed unconstitutional, and on a judicial decision that was later overruled." *United States v. Taylor*, 935 F.3d 1279, 1289 (11th Cir. 2019) (citations omitted), *as corrected* (Sept. 4, 2019), *cert. denied*, ––– U.S. ––––, 140 S. Ct. 1548 (2020). However, "the paradigmatic application of the good faith exception is to evidence obtained in objectively reasonable reliance on a warrant, even if a court later invalidates the warrant for lack of probable cause." *Morales*, 987 F.3d at 973 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

### 2.    Analysis

Even if the third search warrant was unsupported by probable cause, the good faith exception to the exclusionary rule would apply. Of the few qualifications to the good faith exception, one that Norwood implicates is "where the magistrate . . . issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 974 (quoting *Martin*, 297 F.3d at 1312). In other words, if the Government had engaged in conduct that would have triggered a *Franks*

hearing, it could not then hide behind the good faith exception. Otherwise, the good faith exception to the exclusionary rule would effectively incentivize Fourth Amendment violations, which would contravene its purpose. *Davis*, 564 U.S. at 236–37.

Since, as discussed above, Special Agent DiGiulio did not omit material facts to influence the United States Magistrate Judge's probable cause determination, this qualification does not preclude the application of the good faith exception. Therefore, the remaining question is "whether, from the perspective of a reasonable officer, there is any difference—for deterrence or culpability purposes—between the warrant issued in this case and the warrants issued in *Leon*, *Evans*, and *Herring*."[37] *Taylor*, 935 F.3d at 1290. There is no such difference.

The officers and agents in this case did everything they should have done: they seized Norwood's cell phone pursuant to probable cause, but they did not

---

[37] *See generally Leon*, 468 U.S. at 897 (establishing the good faith exception to the exclusionary rule, and applying it when an officer who executed the search relied on an objectively reasonable, facially valid warrant that was later invalidated based on a dubious probable cause determination); *Arizona v. Evans*, 514 U.S. 1 (1995) (applying the good faith exception to the exclusionary rule where officers reasonably relied on a warrant that erroneously appeared outstanding due to a court's clerical error); *Herring v. U.S.*, 555 U.S. 135 (2009) (applying the good faith exception to the exclusionary rule where officers reasonably relied on a warrant that erroneously appeared outstanding in a police database).

search it without a warrant; they obtained the first warrant (the validity of which Norwood does not meaningfully contest) from a neutral judicial officer; when the first warrant expired before they searched Norwood's phone, the officers applied for a second warrant, explaining to another neutral judicial official why they failed to timely search Norwood's phone; and when they determined they had not successfully preserved evidence obtained pursuant to that search, they applied for a third warrant, articulating their bases for probable cause to a third neutral, a federal magistrate judge.

The officers and agents never searched Norwood's phone without an objectively reasonable warrant in hand. And even if the Magistrate Judge who issued the third warrant had erred in finding probable cause, which this Court finds that he did not, suppression would not deter law enforcement misconduct because there was no misconduct. *Morales*, 987 F.3d at 973. Thus, the good faith exception bars suppression.

### III.    CONCLUSION

Norwood's motion to suppress evidence and request for a *Franks* hearing [ECF 75] are **DENIED**. Denson's adopted motion [ECF 102] is **DENIED**.

**SO ORDERED** this 28th day of January, 2022.

_____
Steven D. Grimberg
United States District Court Judge