**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MCKINLEY DENSON, | : | MOTION TO VACATE |
| Fed. Reg. No. 66143509, | : | 28 U.S.C. §2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:20-CR-488-SDG-JSA-2 |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:23-CV-3506-SDG-JSA |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant McKinley Denson has filed the instant *pro se* motion to vacate

pursuant to 28 U.S.C. §2255. (Doc. 177). Movant seeks to challenge the

constitutionality of his convictions and sentences following his guilty plea in the

Northern District of Georgia.

I.      Procedural and Factual History

        A.      Facts[1]

In January 2020 the Drug Enforcement Agency ("DEA") learned that

Movant's codefendant José Anaya-Escobar was attempting to obtain kilogram

quantities of cocaine, and began investigating him for drug trafficking. (Doc. 179-

---

[1]      Unless otherwise indicated, these facts were relayed by the Government
during the plea hearing as the factual basis of Movant's guilty plea, to which Movant
agreed. (Doc. 179-2 at 8-14). Several of these facts also are contained in the plea
agreement. (Doc. 130-1 at ¶12).

2 ("Plea Tr.") at 8). In February 2020 Anaya-Escobar arranged to broker a sale of five kilograms of cocaine from an undercover DEA officer posing as a cocaine source of supply. (*Id.*). Anaya-Escobar spoke with the undercover DEA officer by phone and scheduled the transaction for February 13, 2020. (*Id.*). For safety reasons, however, the DEA called off the deal after Anaya-Escobar subsequently attempted to move the location to an auto mechanic shop in Atlanta known to be associated with Movant. (*Id.* at 8-9).

In early June 2020, Anaya-Escobar and Movant exchanged several texts and phone calls regarding Anaya-Escobar's wish to broker the purchase of five to ten kilograms of cocaine. (*Id.* at 9). On June 3, 2020, Anaya-Escobar sent a text to Movant stating "good news" and "call you now." (*Id.*). On June 8, 2020, after agreeing to broker the sale of ten kilograms of cocaine at a price to the seller of $27,000 per kilogram, Anaya-Escobar sent a text to Movant that read "28" – which meant that the price Movant would have to pay would be $28,000 per kilogram for the cocaine. (*Id.*). Movant responded, "It's a go. I want them all," to which Anaya-Escobar responded, "Okay." (*Id.*). Anaya-Escobar and Movant also exchanged several phone calls that day. (*Id.*).

On June 16, 2020, the undercover DEA officer and Anaya-Escobar arranged by phone that the agreed-upon cocaine purchase would occur later that day. (*Id.*). Anaya-Escobar stated that he would send someone to get "one hand" and that they

would come back for the other "hand" – which meant that there were ten total kilograms of cocaine available for Movant to purchase.[2] (*Id.*).  Anaya-Escobar told the undercover DEA officer that the person he would be sending was a black man driving a blue Ford Mustang, and texted Movant the DEA officer's phone number. (*Id.* at 10).  Thereafter, Movant exchanged several phone calls with the DEA officer regarding his location, the meeting location, and how to get there. (*Id.*).  They agreed to meet at the Sam's Club at 2901 Clairmont Road in Atlanta, Georgia. (*Id.*).

Driving a blue Ford Mustang and accompanied by codefendant Lanarion Norwood in the front passenger seat, Movant entered the parking lot of the Sam's Club at approximately 1:52 p.m. (*Id.*).  They met with an undercover DEA officer posing as a representative of the cocaine source of supply, who stated that he would take them to the stash location after they showed him the "paper," that is, the money. (*Id.*).  Movant's car was stopped by Georgia State Parole ("GSP") shortly thereafter. (*Id.*).  During the traffic stop GSP searched Movant's car and found two plastic bags containing a total of $76,310 in cash, found an additional $3,593 on Movant's person, and an additional $2,299 on Norwood's person. (*Id.* at 10-11).

GSP troopers also found a Glock 27, Gen4, 40-caliber pistol underneath the driver's seat of the car, which Norwood stated belonged to him, and discovered a

---

[2]     The word "hand" is a common code for five kilograms of cocaine. (Plea Tr. at 9-10).

total of six cell phones, four of which were in Movant's possession.  (*Id.* at 11).

DEA investigators searched these phones and discovered numerous incriminating

text messages, including those messages discussed previously herein.  (*Id.*).  The

investigators also learned that in the year before this event Movant purchased at least

ten kilograms of cocaine from a source of supply in a deal that was also brokered by

Anaya-Escobar.  (*Id.*).

B.      Procedural History

On December 9, 2020, a federal grand jury in the Northern District of Georgia

returned a five-count indictment charging Movant, Anaya-Escobar, and Norwood

with various drug and firearm offenses. (Doc. 1).  In particular, Movant was charged

with two counts: conspiracy to possess cocaine with the intent to distribute, and

attempt to possess cocaine with the intent to distribute, in violation of 21 U.S.C.

§841(a)(1) and §846.  (*Id.* at 1-2).  On February 25, 2022, while represented by Max

C. Richardson, Jr., Movant entered a guilty plea to the conspiracy count pursuant to

a negotiated plea agreement.[3]  (Docs. 130, 130-1 ("Plea Agreement")).

Therein, Movant and the Government agreed in relevant part that:  Movant

would receive an offense adjustment for acceptance of responsibility [Plea

Agreement ¶15]; the applicable offense guideline was Section 2D1.1 [*Id.* ¶14(a)];

---

[3]     As part of the plea agreement, the attempt charge was dismissed.  (Doc. 151 at 1).

the criminal activity involved at least fifteen kilograms of cocaine, which was reasonably foreseeable to Movant [*Id.* ¶14(b)]; Movant would receive the two-level upward adjustment pursuant to Section 2D1.1(b)(1) pertaining to possession of a dangerous weapon [*Id.* ¶14(c)]; and the Government would recommend a sentence at the low end of the adjusted guideline range [*Id.* ¶18]. Movant also agreed that the recommendations, stipulations, and guideline computations were not binding on the Court [*Id.* ¶28]. Additionally, the plea agreement contained an appellate and collateral waiver ("appellate waiver"), by which Movant waived his right to file an appeal and collaterally attack his conviction and sentence in any post-conviction motion – including a motion under §2255 – on any ground, except for an upward departure or variance from the guideline range or for ineffective assistance of counsel claims [*Id.* ¶29]. During the plea colloquy and in the plea agreement, Movant affirmed that he had read the agreement in its entirety, carefully reviewed every part of it with his attorney, understood the terms and conditions of the agreement and voluntarily agreed to them, and was fully satisfied with his counsel's representation. (*Id.* at 17; Plea Tr. at 5, 8, 15, 18-19).

Also during the plea colloquy, Movant stated under oath that: he understood the constitutional rights he was waiving by pleading guilty; he understood that he was entering a plea to conspiracy to possess with the intent to distribute at least five kilograms of cocaine and the consequences thereof, including a potential maximum

penalty of life imprisonment and a mandatory minimum of ten years; his decision to plead guilty was not the product of threats, force, or promises other than those contained in the agreement; he had conferred with counsel about how the sentencing guidelines might apply in his case; he understood that neither the Government's sentence recommendation nor the guidelines were binding on the Court, that the Court had authority to impose a sentence more or less severe than the guidelines range, and that such a sentence would not be a basis to withdraw his guilty plea. (Plea Tr. at 5-8, 12-15, 18).

The Court also discussed the appellate and collateral rights Movant was relinquishing in the appellate waiver contained in the agreement, which Movant stated he understood. (*Id.* at 17). Movant's counsel indicated that he had discussed the appellate waiver explicitly with Movant "a couple of times," in his professional judgment he believed it was in Movant's best interest to agree to the waiver, and he did not find it necessary for the Court to go over it again. (*Id.*). After the Government set forth the factual basis for the plea, Movant told the Court that he agreed with that synopsis and affirmed that he was, in fact, guilty of the offense in the indictment to which he was entering a plea. (*Id.* at 11-12). Thereafter, the Court found that Movant entered into the plea knowingly, voluntarily, and competently, and accepted the guilty plea. (*Id.* at 19).

On August 8, 2022, the Court sentenced Movant to a total of 151 months of imprisonment.  (Doc. 151 at 1-2).  Movant did not file a direct appeal.

Movant executed the instant *pro se* §2255 motion to vacate his sentence on July 31, 2023.  (Doc. 177).  Therein, he raises one claim for relief, that he is actually innocent because conspiracy to possess cocaine with the intent to distribute is not a crime.[4]  (*Id.*).  The Government argues that Movant's actual innocence claim is barred by the appellate waiver in the plea agreement, it fails on the merits because conspiracy to possess cocaine with the intent to distribute is, in fact, a criminal offense, and that this claim is procedurally defaulted.  (Doc. 180).  The Government further argues that Movant's ineffective assistance of counsel claim simply constitutes an attempt by Movant to circumvent the appellate waiver, and that, in any event, the claim has no basis in law or fact.  (*Id.*).  Movant has not filed a reply.  For the following reasons, the undersigned **RECOMMENDS** that the instant §2255 motion be **DENIED**.

---

[4]     Although the Government states that Movant raises an ineffective assistance of counsel claim, any such claim does not appear to be another ground for relief. Instead, Movant's allegations that counsel was ineffective were in response to the question on the §2255 form requesting the reason for Movant's failure to raise the actual innocence claim on appeal. (Doc. 177 at 4).  As a result, the undersigned will construe the ineffective assistance claim as Movant's attempt to show cause for his procedural default and not as a separate ineffective assistance of counsel claim. Either way, the analysis yields the same result.

II.    Standard of Review

Congress enacted §2255, authorizing convicted criminal defendants to file a

motion to correct sentences that violate federal law, with the intention that the statute

serve as the primary method of collateral attack on federally imposed sentences.

*United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255,

individuals sentenced by a federal court can attack the sentence imposed by claiming

one of four different grounds: "(1) that the sentence was imposed in violation of the

Constitution or laws of the United States; (2) that the court was without jurisdiction

to impose such sentence; (3) that the sentence was in excess of the maximum

authorized by law; and (4) that the sentence is otherwise subject to collateral attack."

*Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle

than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166

(1982).    Movant must establish that the facts surrounding his claim present

"exceptional circumstances where the need for the remedy afforded by the writ of

habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief."  28

U.S.C. §2255(b); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir.

2020) (noting that although a movant is entitled to evidentiary hearing if relief is

warranted by the facts he alleges, a hearing is not required if the record conclusively

demonstrates that no relief is warranted).   As discussed below, Movant's §2255

motion and the record in this case conclusively show that Movant is not entitled to

relief in connection with his claims. Thus, no evidentiary hearing is required.

III.    Analysis

Movant argues that he is actually innocent of conspiracy to possess with intent

to distribute cocaine because when he was indicted the Eleventh Circuit had changed

the definition of conspiracy in *United States v. Dupree*, 849 F. App'x 911 (11th Cir.

2021) (per curiam) ("*Dupree I*").[5]   Specifically, according to Movant, the Eleventh

Circuit in *Dupree I* held that conspiracy to possess with intent to distribute is no

longer a controlled substance offense and, therefore, he was not convicted of a crime.

(Doc. 1 at 4-5).   Putting aside for the moment that Movant's argument is simply

wrong, he cannot raise an actual innocence claim here.

---

[5]     Movant also argues that the charge for which he was arrested (attempt to
purchase cocaine) and the charge for which he was indicted (conspiracy with intent
to distribute at least 500 grams of cocaine) are inconsistent.  (Doc. 1 at 4).  The
undersigned first notes that Movant was, in fact, indicted for attempt, and that charge
was dismissed as part of the plea.  What's more, any such alleged inconsistency is
immaterial because "so long as the prosecutor has probable cause to believe that the
accused committed an offense defined by statute, the decision whether or not to
prosecute, and what charge to file or bring before a grand jury, generally rests
entirely in his discretion."  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978);
*United States v. Cespedes*, 151 F.3d 1329, 1331 (11th Cir. 1998).

A.    The Appellate Waiver Bars Movant's Actual Innocence Claim.

First, Movant's plea agreement provides that Movant may not collaterally attack his conviction and sentence – including through a §2255 motion – except under circumstances not relevant here.  Movant does not argue that his plea was not voluntary and, as discussed previously herein in Section I.B., his testimony during the plea colloquy – which carries a presumption of truth, *see Blackridge v. Allison*, 431 U.S. 63, 74 (1977) – indicates that he did, in fact, enter into the plea knowingly and voluntarily.  Movant has not brought forth any evidence to rebut the strong presumption of the veracity of his statements during the plea hearing and therefore fails to demonstrate that his plea was anything other than knowing and voluntary. *Cf.  Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (finding movant's allegations that his plea was not voluntary were in direct conflict with his statements during the plea colloquy, he produced no evidence to challenge the veracity thereof, and his self-serving statements were insufficient to demonstrate that his plea was not voluntary).

Because Movant knowingly and voluntarily entered into the plea agreement containing the appellate waiver, that appellate waiver is valid and enforceable. *See United States v. Arce*, 718 F. App'x 931, 933-34 (11th Cir. 2018) (per curiam); *United States v. Santiesteban*, 587 F. App'x 548, 551 (11th Cir. 2014) (per curiam); *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011) (per curiam); *United*

*States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011) (per curiam); *Williams v.*

*United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997

F.2d 1343, 1350 (11th Cir. 1993). "[O]ne of the keys to enforcing a sentence appeal

waiver is that the defendant knew he had a 'right to appeal his sentence and that he

was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted). In order to

prevail on an argument to enforce a waiver, the Government must show that either

"(1) 'the district court questioned the [movant]' about the waiver; or (2) the record

makes clear 'that the [movant] otherwise understood the full significance of the

waiver.'" *Wilson*, 445 F. App'x at 207 (quoting *Bushert*, 997 F.2d at 1351); *Ramos*,

433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir.

2008). In this case, the Government has demonstrated both.

Even assuming for the sake of argument that Movant's actual innocence claim

had any merit, it still would be precluded by the waiver. *See, e.g., Daniels v. United*

*States*, No. 22-13509, 2023 WL 7149105, at *1 (11th Cir. July 6, 2023) (denying a

certificate of appealability for defendant's claim that his guilty plea was invalid

based on new case law, as any such claim was waived by his guilty plea and appellate

waiver); *United States v. Bijou*, No. 21-14443, 2023 WL 1991784, at *1 (11th Cir.

Feb. 14, 2023) (per curiam) ("[W]e've said that appeal waivers apply 'not only to

frivolous claims, but also to difficult and debatable legal issues.'") (quoting *United*

*States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016)); *United States v. Wyche*,

No. 21-14301, 2022 WL 17883935, at *5 (11th Cir. Dec. 23, 2022) (per curiam)

(affirming dismissal of claim as barred by appellate waiver that based on new case

law aiding and abetting Hobbs Act robbery was not a crime of violence); *King v.*

*United States*, 41 F.4th 1363, 1369 (11th Cir. 2022) ("We are not the only circuit

court to recognize the value of enforcing appeal waivers against claims based on

new constitutional rules.  To the contrary, the 'principle that future changes in law

do not vitiate collateral-challenge waivers is mainstream.'") (quoting *Portis v.*

*United States*, 33 F.4th 331, 335 (6th Cir. 2022)); *United States v. Howle*, 166 F.3d

1166, 1169 (11th Cir. 1999) ("While it may appear unjust to allow criminal

defendants to bargain away meritorious appeals, such is the necessary consequence

of a system in which the right to appeal may be freely traded.").[6]

###### B.     Movant Has Not Demonstrated Actual Innocence.

Even if the appellate waiver did not preclude his actual innocence claim,

however, Movant has failed to demonstrate that he is, in fact, actually innocent of

conspiracy to possess with intent to distribute cocaine.  To that end, an actual

innocence claim is "exceedingly narrow in scope," and a movant must demonstrate

that he is factually innocent rather than legally innocent.  *Granda v. United States*,

---

[6]     As the Government points out, Movant concedes that the Eleventh Circuit had already decided *Dupree I* when he was indicted so it was not "new."  (Doc. 177 at 4).  Moreover, as discussed in Section III.B. *infra*, *Dupree I* does not support Movant's argument that conspiracy is no longer a crime in the Eleventh Circuit, and, therefore, Movant's reliance on *Dupree I* is incorrect.

990 F.3d 1272, 1292 (11th Cir. 2021) (internal quotation marks and citations omitted); *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012) (per curiam).  Movant has not presented any new, reliable evidence that he is factually innocent, and he could not do so given his guilty plea.  *See Banks v. United States*, 770 F. App'x 946, 948 (11th Cir. Apr. 25, 2019) (per curiam) ("To show actual innocence, a movant must present new, reliable evidence that he is factually innocent of the crime of conviction.").  Instead, Movant argues that he is legally innocent based on *Dupree I*, which is insufficient.

Regardless, Movant's argument that conspiracy to possess cocaine with the intent to distribute is not a criminal offense is misguided.  First, in *Dupree I*, the Eleventh Circuit held that for the purpose of sentencing a defendant as a career offender conspiracy is, in fact, a controlled substance offense.  *Dupree I*, 849 F. App'x at 912.  The Eleventh Circuit, however, subsequently provided a rehearing of *Dupree I en banc*, reversed its decision, and held that conspiracy is not a controlled substance offense – but also *only for purposes of the career offender sentencing enhancement* under the United States Sentencing Guidelines."[7]  *United States v. Dupree*, 57 F.4th 1269, 1271 (11th Cir. Jan. 18, 2023) (en banc) ("*Dupree II*")

---

[7]     Although Movant cites to *Dupree I* for his argument, he claims that the Eleventh Circuit held that conspiracy is not a controlled substance offense within the meaning of Section 4B1.2 of the sentencing guidelines, which actually is the holding in *Dupree II*.  (Doc. 177 at 5).

(emphasis added). Importantly, Movant did not receive an enhanced sentence as a career offender under the guidelines; therefore, the holdings in *Dupree I* and *Dupree II* are inapposite, conspiracy to possess with the intent to distribute cocaine still constitutes a criminal offense to which Movant entered a guilty plea, and his actual innocence claim fails.

     C.     Movant's Actual Innocence Claim Is Procedurally Defaulted.

Finally, Movant's claim that he is actually innocent also is procedurally defaulted. "A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so." *Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014) (per curiam); *see also Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. §2255 challenge.").

The movant can "avoid the procedural bar by establishing that either of the following exceptions applies: (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence." *Hill*, 569 F. App'x at 648. "[T]o show cause for procedural default [a §2255 movant] must show that some objective factor external to the defense prevented [the movant] or his counsel from raising [the] claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam).

"Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to [the movant's] actual and substantial disadvantage[.]"  *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010).  And, as set forth previously herein in Section III.B., to demonstrate a miscarriage of justice based on actual innocence, a movant must show factual innocence.  *Rozzelle*, 672 F.3d 1012-15.

While ineffective assistance of counsel can constitute cause, any such claim must have merit.  *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013). Because Movant's actual innocence claim does not have merit, counsel could not have been deficient for failing to raise it.  *See Blanc v. United States*, No. 17-12394-A, 2017 WL 11812993, at *2 (11th Cir. July 12, 2017) (rejecting argument that actual innocence excused procedural default because movant had not shown factual innocence and could not do so in light of his guilty plea); *Love v. United States*, No. 5:17-CV-08008-RDP, 2020 WL 1235546, at *4 (N.D. Ala. Mar. 9) (finding ineffective assistance claim for counsel's failure to raise petitioner's "actual innocence" on appeal to be meritless, "because Petitioner has not shown (and cannot show) that he is 'actually innocent.'"), *certificate of appealability denied*, No. 20-11767-J, 2020 WL 6591199 (11th Cir. Aug. 3, 2020), *cert. denied*, No. 20-7030, 141 S. Ct. 2637 (U.S. May 17, 2021); *see also Garcia v. Sec'y, Fla. Dep't of Corr.*, No. 21-12461, 2023 WL 5927136, at *3 (11th Cir. Sept. 12, 2023) (per curiam) ("[C]ounsel is not ineffective for failing to raise claims reasonably considered to be

without merit.") (internal quotation marks and citations omitted); *Franks v. GDCP*

*Warden*, 975 F.3d 1165, 1170 (11th Cir. 2020) ("[W]e have repeatedly held that if a

particular claim itself is without merit," any failure of counsel to raise or adequately

pursue it "'cannot constitute ineffective assistance of counsel.'") (citations omitted);.

## IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that

McKinley Denson's motion to vacate his sentence [Doc. 177] be **DENIED WITH**

**PREJUDICE**.

## V.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse

to the applicant. . . . If the court issues a certificate, the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."     28

U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue

"only if the applicant has made a substantial showing of the denial of a constitutional

right."  In order for the certification requirement to fulfill its function of weeding out

frivolous appeals, a court should not automatically issue a COA; rather, the applicant

must prove "something more than the absence of frivolity" or "the existence of mere

'good faith' on his or her part."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)

(citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's actual innocence claim is barred by the valid and enforceable appellate waiver, he has not demonstrated factual innocence, and the actual innocence claim is procedurally defaulted. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 17th day of November, 2023.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE